1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT BRIAN STONE,<br><br>          Plaintiff,<br><br>   v.<br><br>C.U.S. YSIDRO BECERRA,<br>SERGEANT C. ADAMS, and<br>CORRECTIONAL OFFICER G.<br>STARR,<br><br>          Defendants. | NO:  CV-10-138-RMP<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS |

## I. INTRODUCTION

Before the Court is Defendants' Motion to Dismiss all of Plaintiff's claims

in this matter (Ct. Rec. 12).  The Court has reviewed and considered Plaintiff's

Complaint and accompanying exhibits (Ct. Rec. 6), the Defendants' Motion to

Dismiss for failure to exhaust remedies and failure to state a claim upon which

relief can be granted (Ct. Rec. 12) and accompanying brief (Ct. Rec. 13),

Plaintiff's Response (Ct. Rec. 17), and Defendants' Reply (Ct. Rec. 18).  Plaintiff

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

is proceeding *pro se*, and the Attorney General of Washington represents Defendants.

Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that his First Amendment right to petition the government for redress of grievances was infringed (Ct. Rec. 6-27 at 69). Plaintiff alleges that Defendants retaliated and conspired against him for filing grievances (Ct. Rec. 6-27 at 69-70). Defendants have filed a Motion to Dismiss that addresses two issues. The first issue is whether Plaintiff failed to exhaust his administrative remedies before filing a complaint in federal court pursuant to 42 U.S.C. § 1997e(a). The second issue is whether Plaintiff has failed to state plausible retaliation and conspiracy claims upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## II. BACKGROUND

At the time of filing his complaint, Plaintiff Robert Brian Stone ("Mr. Stone") was in custody at the Airway Heights Corrections Center, a Washington State Department of Corrections ("DOC") facility (Ct. Rec. 6-27 at 2). Defendants, Correctional Unit Supervisor Ysidro Becerra ("C.U.S. Becerra"), Sergeant Larry C. Adams ("Sergeant Adams"), and Corrections Officer Gregory Starr ("Officer Starr"), are DOC officials ("collectively referred to as Defendants") (Ct. Rec. 6-27 at 2-3). The Washington Offender Grievance Program allows

inmates to file grievances regarding different aspects of their incarceration including "institution policies, rules and procedures," "the actions of staff," and "retaliation by staff for filing grievances" (Ct. Recs. 14 at 2; 14-4 at 3).  The Offender Grievance Program allows inmates to appeal their grievances to three higher levels if they are not satisfied with the DOC's response (Ct. Rec. 14-4 at 5).

***Events Giving Rise to Mr. Stone's Complaint***

On September 23, 2008, Mr. Stone filed Grievance #1 (#0822335) regarding Officer Starr's violation of count procedures[1], in particular waking inmates and asking if only one person was in the cell (Ct. Rec. 6-2).  After appealing this grievance and filing additional grievances, Mr. Stone alleges that prison officials began retaliating against Mr. Stone because of his use of the grievance program.

Mr. Stone alleges that Officer Starr woke him up and changed the way that the officer would ask questions during count procedure in retaliation for Mr. Stone's filing and appealing Grievance #1 (Ct. Rec. 6-27 at 9, 11, 16).  Mr. Stone alleges that also in retaliation for filing Grievance #1, Sergeant Adams made false statements during an investigation of Mr. Stone's Grievance #1 (Ct. Rec. 6-27 at 7).  Mr. Stone alleges that his cell was searched on October 22 and November 26,

---

[1] Count procedure is a security measure in which officers count inmates while they are in their cells (Ct. Rec. 6-27 at 4).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

2008 in retaliation for filing grievances (Ct. Recs. 6-3; 6-6).  Mr. Stone alleges that on November 28 and December 20, 2008, he was issued "false" infractions for incompliance with count procedures also in retaliation for filing grievances (Ct. Recs. 6-12; 6-15).

Near the end of November, Mr. Stone filed three new initial grievances, Grievance #2 (#0829195), Grievance #3 (#0829196), and Grievance #4 (#0829194), containing retaliation and harassment claims concerning the previously identified "retaliatory" change in questions during count procedures, cell searches, and an infraction report (Ct. Recs. 6-5; 14-3; 6-9).

On December 30, 2008, Mr. Stone was issued a third infraction for allegedly "giv[ing] something" to another inmate (Ct. Rec. 6-27 at 37).  Mr. Stone met with C.U.S. Becerra the following day to discuss the infraction (Ct. Rec. 6-27 at 38).  At this meeting, Mr. Stone alleges that he discussed the third infraction and the Level III response to Grievance #1 with C.U.S. Becerra (Ct. Rec. 6-27 at 38-39).  Mr. Stone alleges that he sat outside Sergeant Adams's office while Sergeant Adams, C.U.S. Becerra, and Officer Starr met (Ct. Rec. 6-27 at 39).  Approximately three hours after the meeting between Defendants, Mr. Stone alleges that his cell was searched, and that he was stripped searched in retaliation for Mr. Stone's continued use of the grievance program (Ct. Recs. 6-19; 6-27 at 40-41).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 4

After this incident, Mr. Stone filed Grievance #5 (#0903340) on April 20, 2009, alleging that C.U.S. Becerra made false statements during an investigation and that Defendants retaliated against him in the form of infractions, cell searches, and a strip search (Ct. Rec. 6-25).

In total, Mr. Stone filed five grievances.  Mr. Stone appealed Grievances #1 and #5, which were reviewed at all levels of the Offender Grievance Program. Mr. Stone did not appeal Grievances #2, #3, and #4 beyond the first level of review.

The Court will analyze each of the grievances separately to determine whether Mr. Stone exhausted all of his administrative remedies for each grievance.

***Grievance #1***

Grievance #1 took a straightforward path of review (Ct. Rec. 6-2).  Mr. Stone filed Grievance #1 on September 25, 2008, regarding a corrections officer's waking sleeping inmates during a tier/security check when inmates are counted (Ct. Rec. 6-2).  The DOC addressed this grievance at all levels of the Offender Grievance Program, and it concluded on December 4, 2008 that "[a]waking an inmate is not a practice that is acknowledged unless the inmate cannot be seen breathing or that any part of the body can be seen to determine someone is there. C.U.S. Becerra has indicated that he will address the issue with the unit staff" (Ct. Rec. 6-2).  Therefore, Mr. Stone exhausted his administrative remedies for

Grievance #1.  Grievance #1 is a precursor to Mr. Stone's retaliation claims in his complaint.

***Grievances #2, #3, #4, and #5***

The next set of grievances was not addressed in such a straightforward manner.  Mr. Stone filed three separate initial grievances, but did not appeal Grievances #2, #3, and #4.  The December 9, 2008, response to all of these first level grievances was that Mr. Stone failed to state how he was grieved (Ct. Recs. 6-5; 14-3; 6-9).  On December 30, 2008, Mr. Stone re-filed Grievance #4 that he previously had filed on November 28, 2008 (Ct. Rec. 6-16).  The response to re-filed first level Grievance #4 was that Mr. Stone was time-barred from clarifying Grievance #4 (Ct. Rec. 6-16).

After filing Grievances #2, #3, and #4, Mr. Stone wrote Superintendent Maggie Miller-Stout[2] a letter, to which she responded on December 16, 2008. Superintendent Miller-Stout stated that "a more formal investigation [would] be conducted" (Ct. Rec. 6-14).  On January 21, 2009, Superintendent Miller-Stout

---

[2] Maggie Miller-Stout is the superintendent of the Airway Heights Corrections Center (Ct. Rec. 6-14). She is the DOC official who responded to Mr. Stone's Grievance #1 and Grievance #5 when he appealed to Level II (Ct. Recs. 6-2; 6-25).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 6

informed Mr. Stone that the formal investigation regarding Mr. Stone's allegations of harassment and retaliation found no evidence of retaliation (Ct. Rec. 6-21).

On February 12, 2009, Mr. Stone filed Grievance #5, which restated the claim of retaliation through infractions and cell searches, and he introduced a conspiracy to retaliate claim regarding the cell search and strip search on December 31, 2008 (Ct. Rec. 6-24).  The DOC reviewed this grievance at all levels of the Washington Offender Grievance Program, and it concluded that "[y]ou [Mr. Stone] have provided no evidence to prove your allegations that staff have lied. There is verification that staff did do a cell search on 12/31/08 for pruno[3] and because of alleged tobacco possession by your cellmate.  A search report could not be found to verify your claim of strip search" (Ct. Rec. 6-25).  The DOC's final response to Grievance #5 establishes that Mr. Stone exhausted his administrative remedies for Grievance #5.

---

[3] "Pruno, or prison wine, is an alcoholic liquid variously made from apples, oranges, fruit cocktail, ketchup, sugar, and possibly other ingredients, including bread. Pruno originated in (and remains largely confined to) prisons, where it can be produced cheaply, easily, and discreetly" (Ct. Rec. 13 at 12).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 7

### III. STANDARDS FOR DISMISSAL

**A. Prisoner Litigation Reform Act**

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a defendant may move to dismiss for a prisoner's failure to exhaust administrative remedies before bringing an action in federal court. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20. If a court finds an inmate has not exhausted his or her administrative remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

**B. Rule 12(b)(6) Standard**

Under Fed. R. Civ. P. Rule 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Under the PLRA, if a district court dismisses a prisoner's complaint for failing to state a claim, the court may use its discretion to determine whether the complaint should be dismissed with or without leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1124 (9th Cir. 2000).

# IV. DISCUSSION

## A. Whether Mr. Stone Exhausted his Administrative Remedies.

The PLRA provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a).  Failure to exhaust administrative remedies before filing a § 1983 claim is an affirmative defense that defendants must raise and prove.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (citing *Wyatt*, 315 F.3d at 1119).  Exhaustion of administrative remedies requires "proper exhaustion," which encourages prisoners to use the grievance process and allows the prison to address grievances.  *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . . "  *Id.* at 90.  In addition, a grievance must contain enough "factual specificity" to "notify the prison of a problem."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (finding an inmate did not exhaust his administrative remedies because his grievance lacked the information necessary for the prison to resolve the grievance).

The exhaustion requirement has two important purposes.  *Nunez v. Duncan*, 591 F.3d 1217, 1223 (9th Cir. 2010) (citing *Woodford*, 548 U.S. at 89).  First, the

requirement "gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of the [the agency's] procedures.'" *Id.* "'Second, exhaustion promotes efficiency' because '[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.*

In total, Mr. Stone filed five grievances. Grievances #1 and #5 were reviewed at all levels of the Offender Grievance Program and, therefore, those grievances have been exhausted. *See Woodford,* 548 U.S. at 92-94. Grievances #2, #3, and #4 were not appealed beyond the first level of review and were not exhausted.

Mr. Stone's retaliation claims are based on the following: (1) Officer Starr's change in questions, (2) Sergeant Adams's false statements during the grievance process, (3) cell searches on October 22 and November 26, 2008, and (4) infraction reports on November 28 and December 20, 2008. Mr. Stone's conspiracy claim is based on a cell search and strip search on December 31, 2008. The Court will address whether these claims were included in Grievances #1 or #5, and therefore, whether Mr. Stone exhausted his administrative remedies regarding these claims.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 10

**1. Officer Starr's Change in Questions**

Mr. Stone alleges that Officer Starr woke him up and changed the way he asked questions during count procedure in retaliation for Mr. Stone filing grievances regarding count procedure (Ct. Rec. 6-27 at 9, 11, 16). Mr. Stone set forth these allegations in Grievances #2, #3, and #4; however, these initial grievances were never appealed (Ct. Recs. 6-5; 14-3; 6-9). Mr. Stone tried to re-file Grievance #4, but Mr. Stone was time barred from re-filing this grievance (Ct. Rec. 6-16). Furthermore, Mr. Stone did not set forth these allegations when Mr. Stone was allowed to proceed with Grievance #5 (Ct. Rec. 6-25). The Court finds that Mr. Stone failed to properly exhaust his administrative remedies regarding Officer Starr's alleged change in questions during count procedure. Therefore, the Court dismisses this claim.

**2. Sergeant Adams's False Statements during the Grievance Process**

Mr. Stone alleges that Sergeant Adams made false statements during the grievance process (Ct. Rec. 6-27 at 7). Mr. Stone's Grievance #1 refers to Mr. Stone's disagreement with Sergeant Adams' response to his grievance and Sergeant Adams' alleged knowledge of officers not following count policy procedure (Ct. Rec. 6-2). The words "false statement" are not specifically used in exhausted Grievance #1, but Mr. Stone's allegations can be inferred from the language. Since Mr. Stone's false statement allegations are contained in exhausted

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 11

Grievance #1, the Court finds that Mr. Stone's false statement claim was properly

exhausted.

**3. Cell Searches on October 22 and November 26, 2008**

Mr. Stone alleges that his cell was searched on October 22 and November

26, 2008 (Ct. Rec. 6-27 at 6, 14).  Mr. Stone alleges that these cell searches were

retaliatory acts intended to punish Mr. Stone for filing grievances (Ct. Rec. 6-27 at

6, 14).  Mr. Stone first states these allegations in Grievance #3, which was never

appealed.  However, the allegations regarding these two cell searches are briefly

mentioned in Mr. Stone's exhausted Grievance #5.  In addition, the response to the

Grievance #5 refers to Superintendent Miller-Stout's letter, which stated the

findings of the formal investigation and referred to these cell searches (Ct. Rec. 6-

21). Therefore, the Court finds that Mr. Stone properly exhausted his

administrative remedies for the allegations regarding the October 22 and

November 26, 2008 cell searches.

**4. Infraction Reports on November 28 and December 20, 2008**

Mr. Stone alleges that Officer Starr issued Mr. Stone two infraction reports

in retaliation for Mr. Stone filing prison grievances (Ct. Rec. 6-27 at 19-23, 33-35).

Mr. Stone first mentioned the use of infraction reports in Grievance #4, which was

never directly appealed (Ct. Rec. 6-9).  However, Mr. Stone mentions the use of

"false infractions" to harass and retaliate in exhausted Grievance #5.  While the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 12

focus of Grievance #5 is not the false infractions, Mr. Stone "notified" the prison of a problem. *See Griffin,* 557 F.3d at 1120. Since false infractions were part of Mr. Stone's exhausted Grievance #5, the Court finds that Mr. Stone's claims regarding the infraction reports were properly exhausted.

**5. Cell Search and Strip Search on December 31, 2008**

Mr. Stone alleges that Defendants conspired against him by ordering a cell search and strip search on December 31, 2008, in retaliation for Mr. Stone filing grievances (Ct. Rec. 6-27 at 70). Mr. Stone explicitly alleges these claims in exhausted Grievance #5 (Ct. Rec. 6-25). Therefore, the Court finds that the cell search and strip search claim on December 31, 2008 were properly exhausted.

Overall, only one of Mr. Stone's claims is dismissed for failure to exhaust his administrative remedies. The majority of Mr. Stone's claims were properly exhausted because they were stated in Grievances #1 and #5, and the majority of Mr. Stone's claims survive dismissal based on the exhaustion requirement.

In addition, the two purposes of the exhaustion requirement were met for the majority of Mr. Stone's claims. First, Mr. Stone utilized the Washington Offender Grievance Program and followed its procedures in order to file his grievances, which allowed DOC officials to respond to his grievances. Second, Mr. Stone's grievances led to a formal investigation of his grievances within the agency, which is much more efficient than federal litigation. *See Nunez,* 591 F.3d at 1223. While

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 13

Mr. Stone does not accept the results of the investigation, DOC officials reviewed Mr. Stone's claims and provided a thorough response to his grievances (Ct. Recs. 6-2; 6-21; 6-25).

Next, the Court will determine whether Mr. Stone failed to state a claim under Fed. R. Civ. P. 12(b)(6) for the following alleged incidents: (1) Sergeant Adams's allegedly false statements; (2) the cell searches on October 22 and November 26, 2008; (3) the infraction reports on November 28 and December 20, 2008; and (4) the cell search and alleged strip search on December 31, 2008.

**B. Whether Mr. Stone has Failed to State a Claim.**

Under Fed. R. Civ. P. 12(b)(6), a complaint can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must "state a claim to relief that is plausible on its face" in order for the complaint to survive dismissal. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic,* 550 U.S. at 556). The complaint must contain enough factual content so that the plaintiff has "nudged [his] claims across the line from conceivable to plausible." *Bell Atlantic*, 550 U.S. at 547.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 14

However, the United States Court of Appeals for the Ninth Circuit recently stated that the *Iqbal* standard for 12(b)(6) motions is not the only standard that applies to *pro se* filings.  *See Hebbe v. Pliler,* 611 F.3d 1202, 1205 (9th Cir. 2010). Inmates who proceed *pro se* are held to "less stringent standards than formal pleadings drafted by lawyers," *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and courts should "continue to construe *pro se* filings liberally."  *Id.* at 1205.

**1. Retaliation Claims**

Mr. Stone alleges the following events to support his retaliation claims: Sergeant Adams's "deliberate and knowingly false statement" during the grievance process for Grievance #1 (Ct. Rec. 6-27 at 7, 69); two cell searches stated in Grievance #5 (Ct. Rec. 6-27 at 6, 14); and two infraction reports stated in Grievance #5 (Ct. Rec. 6-27 at 19-23, 33-35, 69-70).  Mr. Stone alleges these retaliatory acts were intended to punish Mr. Stone because he exercised his First Amendment right by filing prison grievances (Ct. Rec. 6-27 at 69-70).

A prisoner retaliation claim based on the First Amendment has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson,* 408

F.3d 559, 567-68 (9th Cir. 2005).  However, courts should review prisoner

retaliation claims in light of the United States Supreme Court's "disapproval of

excessive judicial involvement in day-to-day prison management."  *Pratt v.*

*Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner,* 515 U.S. 472,

482 (1995)).

**a. Sergeant Adams's False Statements**

        Mr. Stone alleges that Sergeant Adams made a "deliberate and knowingly

false statement designed to hide and cover for correctional officer Starr's

harassment and count policy violations" during the grievance process for

Grievance #1 (Ct. Rec. 6-27 at 7).  While *pro se* complaints should be construed

"liberally," *Hebbe,* 611 F.3d at 1205, the claims in a complaint still must be

"plausible." *Iqbal,* 129 S. Ct. at 1949.  Furthermore, a court is not "required to

accept as true allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors,* 266 F.3d

979, 988 (9th Cir. 2001); *see, e.g., Pratt,* 65 F.3d at 808 (finding that it was "sheer

speculation to assume" that the prison officials who decided to transfer an inmate

knew about the inmate's television interview and the transfer was an act of

retaliation for the interview).

        In the instant case, Mr. Stone's claim against Sergeant Adams must be more

than "conclusory" or an "unwarranted deduction[] of fact" in order to survive a

motion to dismiss.  *Sprewell,* 266 F.3d at 988.  Mr. Stone alleges that Sergeant Adams made "deliberate and knowingly false statements" in retaliation for Mr. Stone's filing of grievances (Ct. Rec. 6-27 at 69).  Mr. Stone alleges that Sergeant Adams cited policy in his response to Mr. Stone's grievance because he wanted to "cover for" another correctional officer's actions (Ct. Rec. 6-27 at 7).  According to the Level II and Level III responses to Grievance #1, Sergeant Adams's citation to policy was correct (Ct. Rec. 6-2), and Mr. Stone does not allege any other facts that warrant the conclusion that Sergeant Adam's response was to "cover for" another officer's behavior.  The Court finds that Mr. Stone's claim regarding false statements is based on "sheer speculation" and "conclusory" allegations, and it is not sufficient to survive Defendant's Motion to Dismiss.

**b. Two Cell Searches**

In Grievance #5, Mr. Stone alleges that his cell was searched on October 22 and November 26, 2008 (Ct. Rec. 6-25).  Mr. Stone alleges that these searches were retaliatory acts intended to punish Mr. Stone for filing prison grievances (Ct. Rec. 6-27 at 6, 14).  The second element of a prisoner retaliation claim is focused on causation. *See Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." *Id.* (quoting *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 17

To survive a motion to dismiss, a plaintiff must plead enough facts to "plausibly" establish a defendant's "retaliatory motive." *See id.; Iqbal,* 129 S. Ct. at 1949; *compare Pratt,* 65 F.3d at 808 (finding that the timing of adverse actions can be circumstantial evidence to establish a retaliatory motive, but timing alone did not "support the inference" of a retaliatory motive); *with Bruce v. Ylst,* 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements).

Furthermore, a retaliation claim is not plausible if there are "more likely explanations" for the action. *Iqbal,* 129 S. Ct. at 1951; *see, e.g., Pratt,* 65 F.3d at 808 (concluding that the reason for transfer was to allow an inmate to be closer to his family was a more likely explanation for the transfer than retaliation).

In the present case, Mr. Stone's retaliation claims for the two searches will survive a motion to dismiss if Mr. Stone has pled enough facts to "plausibly" establish Defendants' "retaliatory motive." *See Brodheim,* 584 F.3d at 1271*; Iqbal,* 129 S. Ct. at 1949.

### i. Cell Search on October 22, 2008

The first search occurred on October 22, 2008, and the search report stated that the purpose of the search was random (Ct. Rec. 6-3). According to the report, ten items were confiscated from Mr. Stone's cell. Mr. Stone alleges that this search

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 18

took place seven days after Mr. Stone appealed Grievance #1, and "[t]he timing of this search is suspicious and would indicate the possibility of retaliatory intent" (Ct. Rec. 6-27 at 6). Mr. Stone does not allege any facts beyond the timing of this cell search to establish a retaliatory motive. The Court finds that the timing of the October 22, 2008 cell search does not "support the inference" that Defendants had a retaliatory motive in searching Mr. Stone's cell.

### ii. Cell Search on November 26, 2008

The second search occurred on November 26, 2008, and no confiscated property was found (Ct. Rec. 6-6). Mr. Stone alleges he sent C.U.S. Becerra a message using the T-unit kiosk[4] two days before the search stating, "Now not only is this harassing behavior continuing, Officers Starr and Santorsola are and have trained the new C/O to do the same thing" (Ct. Rec. 6-4). Mr. Stone alleges that C.U.S. Becerra sent a message back to Mr. Stone that same day stating, "I will take care of it" (Ct. Rec. 6-4). The search on November 26, 2008 was conducted by Officers Starr and Santorsola, and the purpose stated was "[r]andom" (Ct. Rec. 6-6). After this search, Mr. Stone alleges that he sent C.U.S. Becerra another message that questioned the motives of the search (Ct. Rec. 6-7). The email allegedly states, "in regards to my last message, every time you get involved in a complaint my cell gets searched [sic] other cells have not been searched in over

_____

[4] Prisoners can use a kiosk to send messages to DOC officials. *See* Ct. Rec. 6-4.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 19

two months, yet there has been an increase in searches on my cell since i [sic] filed a complaint" (Ct. Rec. 6-7).

Mr. Stone has alleged more facts regarding the November 26 search than the October 22 search.  However, the timing of Mr. Stone's message to C.U.S. Becerra, who did not participate in the cell search, is insufficient evidence to support the inference that Officers Starr and Santorsola had a retaliatory motive when they searched Mr. Stone's cell.  In addition, "more likely explanations" for the cell search was that the cell search was actually "random" as the officers claimed (Ct. Rec. 6-6), or that Mr. Stone's cell was searched because "[c]ontraband had been found on at least one occasion," the October 22, 2008 search in Plaintiff's cell, as Defendants allege (Ct. Rec. 13 at 12).  The Court finds that Mr. Stone has failed to establish sufficient facts to support his claims of a retaliatory motive regarding the cell searches on October 22 and November 26, 2008.  Mr. Stone's allegations regarding the cell searches are not sufficient to survive Defendants' Motion to Dismiss.

**c. Two Infraction Reports**

Mr. Stone alleges that Officer Starr issued Mr. Stone two infraction reports in retaliation for Mr. Stone's filing of Grievances #1, #2, and #3 (Ct. Rec. 6-27 at 19-23, 33-35).  The first element of a prisoner retaliation claim is that "a state actor took some adverse action against an inmate."  *Rhodes,* 408 F.3d at 567-68; *see,*

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 20

*e.g., Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir. 1985) (finding an inmate stated a retaliation claim because he had been reassigned and transferred because he assisted other prisoners with their legal issues).

In addition, "the mere threat of harm can be an adverse action, regardless of whether it is carried out." *Brodheim,* 584 F.3d at 1270. In *Brodheim*, the court found that a prison official's threat of transfer or disciplinary action if an inmate was not "'careful' as to what he wrote in his grievances" was an adverse action even though the threat was not actually carried out. *Id.* However, lower courts should also "evaluate retaliation claims in light of" the United States Supreme Court's "disapproval of excessive judicial involvement in day-to-day prison management." *Pratt,* 65 F.3d at 807 (citing *Sandin,* 515 U.S. at 482) (finding an inmate was unlikely to succeed in proving a retaliation claim because prison officials had a "legitimate reason" for transferring and "double-celling" an inmate).

In the present case, Mr. Stone must allege enough facts to "plausibly" show that the infraction reports were an "adverse action." *See Iqbal,* 129 S. Ct. at 1949; *Rhodes,* 408 F.3d at 567-68. Officers Starr and Debusk issued the first infraction on November 28, 2008 regarding Mr. Stone's incompliance with count procedures (Ct. Rec. 6-27 at 19-23). On November 30, 2008, Sergeants Simmons and Adams dismissed the infraction (Ct. Rec. 6-27 at 27). Officer Debusk issued the second infraction regarding Mr. Stone's incompliance with count procedures on December

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 21

20, 2008 (Ct. Rec. 6-27 at 32-33).  On December 22, 2008, Sergeant Adams said

Mr. Stone was "taken care of and the hearing was over" (Ct. Rec. 6-27 at 33).

Neither of the infraction reports list any action taken or sanctions imposed (Ct.

Recs. 6-12; 6-15).

Here, the infractions may have been "threat[s] of harm" when they were first

issued.  However, both infraction reports were dismissed and Mr. Stone did not

suffer any sanctions from these infractions.  In addition, it appears that Mr. Stone's

Grievance #1 about the count procedure was taken seriously, which led to the

dismissal of the infractions. Considering the United States Supreme Court's

"disapproval of excessive judicial involvement in day-to-day prison management,"

it is inappropriate for a court to address what the prison was able to correct by

dismissing the infractions.  *See Pratt,* 65 F.3d at 807 (citing *Sandin,* 515 U.S. at

482).  Since the prison remedied the issue, the Court finds that Mr. Stone has failed

to establish that the dismissed infraction reports were "adverse actions."

Mr. Stone has failed to state retaliation claims under the Fed. R. Civ. P. Rule

12(b)(6) standard; therefore, the Court dismisses all of Mr. Stone's retaliation

claims.

**2. Conspiracy Claim**

Mr. Stone alleges that Defendants conspired against him by ordering a cell

search and strip search in retaliation for Mr. Stone filing prison grievances (Ct.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 22

Rec. 6-27 at 70).  "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights."  *Crowe v. County of San Diego,* 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir. 1999).  Here, Mr. Stone is alleging that Defendants conspired to retaliate against him for filing Grievance #1 (Ct. Rec. 6-27 at 38).  The elements of a conspiracy and retaliation claim must be considered when determining whether Mr. Stone has stated a claim under Fed. R. Civ. P. 12(b)(6). *See id.* at 440.

The second element of a prisoner retaliation claim is focused on causation. *See Brodheim,* 584 F.3d at 1271.  A plaintiff must show that his "protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'"  *Id.* (quoting *Soranno's,* 874 F.2d at 1314).  To survive a motion to dismiss, a plaintiff must plead enough facts to "plausibly" establish the existence of an agreement between co-conspirators to retaliate and that these co-conspirators had a "retaliatory motive" or "common objective" to violate Mr. Stone's constitutional rights.  *See id.; Iqbal,* 129 S. Ct. at 1949; *see, e.g., Crowe,* 608 F.3d at 440-41 (affirming the trial court's grant of summary judgment on a conspiracy claim because the alleged facts did not establish a "common objective" to violate constitutional rights); *see also Pratt,* 65 F.3d at 808 (finding timing alone did not "support the inference" of a retaliatory motive); *Bruce,* 351 F.3d at 1289 (finding

that suspect timing, evidence, and statements did support the inference of a retaliatory motive).

Furthermore, a retaliation claim is not plausible if there are "more likely explanations" for the action. *Iqbal,* 129 S. Ct. at 1951; *see, e.g., Pratt,* 65 F.3d at 808 (concluding that the reason for transfer was to allow an inmate to be closer to his family was a more likely explanation for the transfer than retaliation).

Mr. Stone's claim will survive dismissal if Mr. Stone pled enough facts to "plausibly" establish that the Defendants had an agreement to retaliate against Mr. Stone. *See Crowe,* 608 F.3d at 440; *Iqbal,* 129 S. Ct. at 1949. Mr. Stone alleges that Defendants conspired to retaliate against him for appealing Grievance #1on November 10, 2008 by ordering a cell search and strip search (Ct. Rec. 6-27 at 70).

On December 31, 2009, Mr. Stone met with C.U.S. Becerra to discuss a third infraction (Ct. Rec. 6-27 at 38). After this meeting, Mr. Stone alleges that he saw the three Defendants meet in Sergeant Adams's office (Ct. Rec. 6-27 at 39). Approximately three hours after this alleged meeting, Mr. Stone claims Officers Wattawa and Ramsey searched his cell, and Officer Cooper strip searched him (Ct. Rec. 6-27 at 40-41). Mr. Stone alleges that the timing between his meeting with C.U.S. Becerra and a meeting between all of the Defendants on the same day as the cell search and strip search establishes the Defendants' retaliatory motive (Ct. Rec. 6-27 at 39-42). Mr. Stone only presents evidence regarding the suspect timing of

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 24

the meetings and the searches, which does not "support the inference" that the

Defendants had a "retaliatory motive" or "common objective" to retaliate against

Mr. Stone.  *See Pratt,* 65 F.3d at 808; *Crowe,* 608 F.3d at 441.

In addition, the Level III response to Mr. Stone's Grievance #5 regarding the

searches seems to provide a "more likely" explanation for the searches: "There is

verification that staff did do a cell search on 12/31/08 for pruno and because of

alleged tobacco possession by your cellmate" (Ct. Rec. 6-25).  In addition, Mr.

Stone alleges that a total of nine cells were searched on December 31, 2008, out of

128 cells (Ct. Rec. 6-27 at 53).  A conspiracy to retaliate claim is not plausible if

the "more likely explanation" for the cell search is that DOC officials were

conducting a search for pruno and tobacco due to the "alleged tobacco possession"

of Mr. Stone's cellmate (Ct. Rec. 6-25).  The Court finds that Mr. Stone has failed

to establish a plausible retaliatory motive for the cell search and strip search on

December 31, 2008 to support Mr. Stone's conspiracy claim.  Therefore, the Court

dismisses Mr. Stone's conspiracy claim.

Ultimately, Mr. Stone's claims fail under Fed. R. Civ. P. 12(b)(6).  Mr.

Stone has failed to either establish one of the elements of a prisoner retaliation

claim, or he has relied on "conclusory" statements that do not "plausibly" state a

claim upon which relief can be granted.

Therefore, the Court dismisses all of the claims in Mr. Stone's complaint for either failing to exhaust administrative remedies or failing to state a claim upon which relief can be granted.

**C. Whether Mr. Stone's Complaint should be Dismissed with Leave to Amend.**

Under the PRLA, a district court "retains its discretion over the terms of a dismissal for failure to state a claim, including whether to make the dismissal with or without leave to amend." *Lopez v. Smith,* 203 F.3d 1122, 1124 (9th Cir. 2000). Under Fed. R. Civ. P. Rule 15(a), "a trial court shall grant leave to amend freely 'when justice so requires.'" *Id.* at 1130 (quoting Fed. R. Civ. P. 15(a)).  In addition, a district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegations of other facts."  *Id.* at 1127 (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).  Furthermore, liberally allowing amendments to a complaint is especially important for *pro se* plaintiffs who are "[p]resumably unskilled in the law . . . [and] more prone to making errors in pleading." *Id.* at 1131 (finding a district court properly dismissed a prisoner's *pro se* complaint with leave to amend because the prisoner could "cure the deficiencies in his complaint by naming the correct defendants").

Mr. Stone's *pro se* complaint should be dismissed with leave to amend if the pleading of other facts could "cure the deficiencies." *Id.* at 1130.  Mr. Stone filed a seventy-three page complaint with thirty four exhibits (Ct. Rec. 6); but, this Court

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 26

dismisses Mr. Stone's claims for failing to establish all of the required elements of a prisoner retaliation claim with sufficient evidence instead of "conclusory" statements that do not "plausibly" state a claim upon which relief can be granted. However, it may be possible for Mr. Stone to cure the deficiencies of his complaint by pleading additional specific facts beyond timing or coincidence that would support his alleged retaliation and conspiracy claims. Considering the strong policy toward allowing *pro se* plaintiff to "liberally" amend their complaint, the Court dismisses Mr. Stone's complaint with leave to amend.

## V. CONCLUSION

Mr. Stone failed to exhaust his administrative remedies for one of his claims, and he failed to plead sufficient facts to establish his remaining claims under Fed. R. Civ. P. Rule 12(b)(6). Therefore,

**IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss (**Ct. Rec. 12**) is **GRANTED**.

2. Plaintiff's Complaint is **DISMISSED** without prejudice.

3. Pending Motions, if any are **DENIED AS MOOT**.

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 27

4.  All court dates, if any are hereby **STRICKEN**.

This District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this 8th day of November, 2010.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Court Judge


**ADDENDUM: TIMELINE OF ALLEGED EVENTS**

| | |
|---|---|
| **September 23, 2008**<br>*Grievance #1*<br>*Level I* | • Mr. Stone filed Grievance #1 (#0822335) regarding Officer Starr's count procedures (Ct. Rec. 6-2 at 2).<br>• The Level I response on October 7, 2008 stated, "The count process does allow the officers the ability to ask an offender (if the offender is perceived to be awake) if there is only one in the cell as the CUS has authorized this process verbally" (Ct. Rec. 6-2 at 2). |
| **October 15, 2008**<br>*Grievance #1*<br>*Level II* | • Mr. Stone filed an appeal to Level II for Grievance #1 (#0822335) regarding count procedures (Ct. Rec. 6-2 at 4).<br>• The response on October 28, 2008 stated, "Officers should not be waking offenders who are sleeping just to ask them if there is another offender in the cell.  The unit CUS has not authorized this practice and will see that it does not happen in the future" (Ct. Rec. 6-2 at 4). |
| **October 16, 2008 and October 22, 2008** | Mr. Stone met with C.U.S Becerra to discuss count procedures (Ct. Rec. 6-27 at 4-5). |
| **October 22, 2008**<br>*Cell Search* | Officer Santorsola searched Mr. Stone's cell and confiscated ten items (Ct. Rec. 6-27 at 6; Ct. Rec. 6-3). |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 28

| November 10, 2008<br>*Grievance #1*<br>*Level III* | • Mr. Stone filed an appeal to Level III for Grievance #1 (#0822335) regarding count procedures (Ct. Rec. 6-2 at 6).<br>• The response on December 4, 2008 stated, "Awakening an inmate is not a practice that is acknowledged unless the inmate cannot be seen breathing or that any part of the body can be seen to determine someone is there.  CUS Becerra has indicated that he will address the issue with the unit staff" (Ct. Rec. 6-2 at 6). |
|---|---|
| November 14, 2008 | Officer Starr woke up Mr. Stone and changed questions during count procedure to "just you?" (Ct. Rec. 6-27 at 8). |
| November 24, 2008 | Mr. Stone sent C.U.S Becerra a message regarding Officer Starr and Officer Santorsola's "harassing behavior" during count procedures (Ct. Rec. 6-27 at 10). |
| November 25, 2008 | Officer Starr woke up Mr. Stone and changed questions during count procedure to "where is your cellie?" (Ct. Rec. 6-27 at 11). |
| November 25, 2008<br>*Grievance #2*<br>*Level I* | • Mr. Stone filed Grievance #2 (#0829195) regarding count procedures and Officer Starr's "retaliatory harassment" (Ct. Rec. 6-5).<br>• The Level I response on December 3, 2008 stated, "Just because you perceive this as harassment doesn't make it so. You've failed to state how you were grieved."<br>• This grievance was never appealed. |
| November 26, 2008<br>*Cell Search* | Officers Santorsola and Starr searched Mr. Stone's cell (Ct. Rec. 6-6). |
| November 26, 2008 | Mr. Stone sent C.U.S. Becerra a message about the timing of the cell search and Mr. Stone's grievances (Ct. Rec. 6-27 at 15). |
| November 27, 2008 | Officer Starr woke Mr. Stone and asked "where is your cellie?" (Ct. Rec. 6-27 at 16). |
| November 27, 2008<br>*Grievance #3*<br>*Level I* | • Mr. Stone filed Grievance #3 (#0829196) regarding retaliation and harassment because of cell searches and Officer Starr's questions (Ct. Rec. 14-3).<br>• The Level I response on December 3, 2008 stated, "Just because you perceive this as harassment doesn't make it so. You've failed to state how you were grieved."<br>• This grievance was never appealed. |
| November 28, 2008<br>*Infraction* | Officer Starr issued Mr. Stone an infraction regarding noncompliance with count procedures (Ct. Rec. 6-12). |
| November 28, 2008<br>*Grievance #4*<br>*Level I* | • Mr. Stone filed Grievance #4 (#0829194) regarding the infraction report (Ct. Rec. 6-9).<br>• The Level I response on December 3, 2008 stated, "Just because you perceive this as harassment doesn't make it so. You've failed to state how you were grieved."<br>• This grievance was never appealed. |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 29

| **November 30, 2008** | Mr. Stone met with Sergeant Adams, and Sergeant Adams dismissed the November 28 infraction report (Ct. Rec. 6-27 at 27). |
|---|---|
| **December 3, 2008** | Mr. Stone sent Superintendent Maggie Miller-Stout a letter regarding staff retaliation and harassment (Ct. Rec. 6-27 at 30). |
| **December 16, 2008** | Superintendent Miller-Stout sent Mr. Stone a letter stating a formal investigation would be opened (Ct. Rec. 6-14). |
| **December 18, 2008** | Officer Starr woke Mr. Stone and asked "just one?" (Ct. Rec. 6-27 at 32). |
| **December 20, 2008**<br>*Infraction* | Officers Starr and Debusk issued Mr. Stone a second infraction for incompliance with count procedures (Ct. Rec. 6-15). |
| **December 30, 2008**<br>*Grievance #4*<br>*Level I* | • Mr. Stone re-filed Grievance #4 (#0829194) regarding Officer Starr's retaliatory acts (Ct. Rec. 6-16).<br>• The Level I response on January 1, 2009 stated, "Mr. Stone, you are past your time frame. You wrote this on 11-28-08 and were asked for clarification. You rewrote on 12-30-08" (Ct. Rec. 6-16).<br>• This grievance was never appealed. |
| **December 30, 2008**<br>*Infraction* | Officers Starr and Santorsola issued Mr. Stone a third infraction (Ct. Rec. 6-27 at 37). |
| **December 31, 2008** | Mr. Stone met with C.U.S. Becerra to discuss the infraction (Ct. Rec. 6-26 at 38). |
| **December 31, 2008**<br>*Cell Search* | Officers Wattawa and Ramsey searched Mr. Stone's cell (Ct. Rec. 6-19). |
| **December 31, 2008**<br>*Strip Search* | Officer Cooper stripped searched Mr. Stone (Ct. Rec. 6-27 at 41). |
| **January 1, 2009** | Officer Starr woke Mr. Stone and asked "just one?" (Ct. Rec. 6-27 at 43). |
| **January 6, 2009** | Officers Starr and Satorsola woke Plaintiff and asked "upper?") (Ct. Rec. 6-27 at 43). |
| **January 8, 2009** | Officers Starr and Cunningham shook Plaintiff's cell door to wake him up and asked "where is your cellie?" and "just one?" (Ct. Rec. 6-27 at 43-44). |
| **January 14, 2009** | C.U.S. Becerra told Mr. Stone there was going to be an investigation (Ct. Rec. 6-27 at 44). |
| **January 16, 2009** | C.U.S. Becerra asked Mr. Stone if Officer Starr was still asking plaintiff if there was "only one in the cell?" and "where is your cellie?" (Ct. Rec. 6-27 at 45). |
| **January 17, 2009** | Officer Starr asked Mr. Stone "just one" during count procedures (Ct. Rec. 6-27 at 45). |
| **January 22, 2009** | Mr. Stone received a letter from Superintendent Miller-Stout regarding the investigation (Ct. Rec. 6-27 at 45).  The letter stated, "After completing the investigation and interviews with staff, I do not find any evidence harassment or retaliation by C/O Starr . . . Asking offenders in a cell if they have a cellmate is not uncommon.  However, if they ask each every time they do count, then that would be construed as |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 30

| | | |
|---|---|---|
| | | harassing.  C.U.S. Becerra will address this type of behavior with unit staff to ensure it does not become a recurring issue" (Ct. Rec. 6-21). |
| | **January 22, 2009** | Mr. Stone sent a letter to the Regional Director of Prisons for Northeast Washington Department of Corrections (Ct. Rec. 6-27 at 48). |
| | **January 30, 2009**<br>*Grievance #5* | • Mr. Stone filed Grievance #5 (#0903340) regarding C.U.S. Becerra's "false statement" during the investigation of Officer Starr's retaliation (Ct. Rec. 6-24).<br>• Grievance Program Manager Devon Schrum responded on March 25, 2009 and said Mr. Stone may proceed with his claim. |
| | **February 2, 2009** | Mr. Stone mailed a letter to Superintendent Miller-Stout, which asked her to re-open the investigation (Ct. Rec. 6-27 at 49). |
| | **February 6, 2009** | Mr. Stone received a letter from Superintendent Miller-Stout responding to Mr. Stone's letter sent to the Regional Director of Prisons for Northeast Washington Department of Corrections.  Her letter stated that her January 22 letter addressed Mr. Stone's concerns (Ct. Rec. 6-22). |
| | **March 16, 2009** | Mr. Stone received a letter from Superintendent Miller-Stout responding to Mr. Stone's February 2 letter (Ct. Rec. 6-27 at 49).  The letter stated, "The issues you have raised in this letter are the same that have been answered previously in the three grievance responses and the response from me dated January 21, 2009 (Ct. Rec. 6-23). |
| | **April 20, 2009**<br>*Grievance #5*<br>*Level I* | • Mr. Stone filed Grievance #5 (#0903340) regarding C.U.S. Becerra's false statements and Defendants' retaliation in the form of infractions, cell searches, and a strip search.<br>• The response on April 28, 2009 stated, "There were no Strip Searches conducted on 12-13-08.  What you seem to be calling a Cell Search on 12-31-08 were Pruno checks completed on every cell in the unit. . . . I found you have not been able, in any of the grievances including this grievance you filed or letters written, given any information that would bring to light information that substantiates or validates your grievance" (Ct. Rec. 6-25 at 2). |
| | **May 11, 2009**<br>*Grievance #5*<br>*Level II* | • Mr. Stone filed an appeal to Level II for Grievance #5 (#0903340).<br>• The response on August 17, 2009 stated, "I find that the letter of 1/21/09 did include erroneous information.  It is now established that your cell was searched on 12/31/08.  That search was conducted as the result of suspicion that your cellmate had contraband in the cell.  It was not due to retaliation against you.  Your statement that you were stripped searched by Officer Cooper cannot be validated" (Ct. Rec. 6-25 at 4). |
| | **September 1, 2009**<br>*Grievance #5*<br>*Level III* | • Mr. Stone filed an appeal to Level III for Grievance #5 (#0903340).<br>• The response on October 27, 2009 stated, "The Level I and II responses appropriately addressed your issue.  You have |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 31

| | provided no evidence to prove your allegations that staff have lied.  There is verification that staff did do a cell search on 12/3108 for pruno and because of alleged tobacco possession by your cellmate.  A search report could not be found to verify your claim of strip search" (Ct. Rec. 6-25 at 6). |
| --- | --- |
| | • Mr. Stone pointed out in his complaint that Airway Heights does not file written body strip search reports (Ct. Rec. 6-27 at 58-59). |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 32